# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2109

_____

United States of America

*Plaintiff - Appellee*

v.

Justin Yankton

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: February 15, 2013
Filed: July 22, 2013
[Unpublished]

_____

Before SMITH, MELLOY, and BENTON, Circuit Judges.

_____

PER CURIAM.

Justin Yankton began living with Brooke L. Black and her children in 2007 on the Spirit Lake Reservation. During that time, Black applied for Low Income Home Energy Assistance Program (LIHEAP) benefits from the Spirit Lake Tribe's ("Tribe") implementation of the federal program. Black failed to include Yankton's income on the LIHEAP applications, which required the applicant to report income from all

household members. Yankton, a tribal official, knew of Black's application and eventual receipt of benefits. A grand jury indicted Yankton and Black on one count of embezzlement and theft from an Indian tribal organization in violation of 18 U.S.C. §§ 1163 and 2. A jury convicted Yankton, but Yankton moved for an acquittal, alleging that the government failed to corroborate his admissions with independent evidence. The district court[1] denied Yankton's motion for acquittal. Yankton appeals, arguing that insufficient evidence exists to support his conviction. We affirm.

## I. *Background*

Black resided at 7120 Crowhill Road in Fort Totten, North Dakota ("7120 Crowhill"). She applied for LIHEAP from the Spirit Lake Tribe in North Dakota. LIHEAP provided her household with propane gas tanks for heating. In the first application submitted for the program year 2008–2009, Black listed the residents of 7120 Crowhill as consisting of herself and her two children. For the program year 2009–2010, Black added a third child; and for the program year 2010–2011, Black listed herself and her four children. The LIHEAP application required that Black submit the household income from all sources. Black submitted her income and signed the applications, but she did not submit the income of Yankton, who had been living at 7120 Crowhill with Black and her children for all of the years for which Black had submitted LIHEAP applications. The inclusion of Yankton's income (approximately $80,000 per year) would have made the Black/Yankton household ineligible for LIHEAP. The propane company, Sioux Per Propane, made nine deliveries of propane to 7120 Crowhill during the three-year LIHEAP period.

Yankton served as Secretary/Treasurer of the Spirit Lake Tribal Council ("Council") in two of the three years for which Black applied for LIHEAP benefits. Yankton was present at meetings where the Council discussed LIHEAP grant

---

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

applications and also was present when the Council signed two tribal resolutions for the Tribe's LIHEAP application. When Federal Bureau of Investigation (FBI) Special Agent Aaron Kellerman confronted Yankton, Yankton admitted that he knew that Black sought LIHEAP benefits and that if his income were included, it would make the household ineligible for LIHEAP. In a subsequent interview, Yankton also admitted to FBI Special Agent Brian Cima that he told Black to apply for LIHEAP benefits. Yankton later stated that he did not know the specific requirements for LIHEAP eligibility. A grand jury indicted Yankton and Black on one count of embezzlement and theft from an Indian tribal organization, in violation of 18 U.S.C. §§ 1163 and 2.

At trial, FBI Special Agent Kellerman testified that Yankton admitted that he knew that Black had submitted the LIHEAP applications, encouraged her to apply, had not reviewed the applications, understood that the inclusion of his income in the LIHEAP applications would have made them ineligible for benefits, and knew that propane from LIHEAP benefits was being delivered to 7120 Crowhill. The propane deliveryman testified that when he delivered the propane to 7120 Crowhill, he saw both Black and Yankton at the residence. Black did not testify.

The Sioux Per Propane bookkeeper testified that 7120 Crowhill received LIHEAP propane deliveries. LaVonne Alberts from the LIHEAP office testified that Black submitted a LIHEAP benefits application that neither included Yankton as a household member nor included Yankton's income. The government also introduced W-2 forms from Black and Yankton showing that their combined incomes exceeded the LIHEAP eligibility limit. Yankton did not testify. Ultimately, a jury found Yankton guilty, and the district court sentenced Yankton to two years of supervised probation. At the close of the government's case and again following the jury verdict, Yankton moved for acquittal contending that his "extrajudicial admissions of essential facts or elements of the crime, made subsequent to the crime, required

corroboration by independent evidence." The district court denied both of these motions. Yankton timely appealed.

## II. *Discussion*

Yankton argues that his conviction should be vacated because the government produced insufficient evidence to establish the elements of the offense. He avers that "this is a 'corpus delicti rule' case." As such, he asserts that the government must present independent evidence regarding the "knowingly" element of the offense; specifically, the government bears the burden to show that Yankton knew the LIHEAP applications were submitted without listing his income. Yankton contends that corroborating evidence must exist of the extrajudicial statements that Yankton allegedly made. Yankton admits that he does not contest that he lived at 7120 Crowhill or that if his income had been included in the LIHEAP application, the household would not have been eligible for LIHEAP. Yankton also contends that there was no proof of marriage and no proof of how Black and Yankton divided financial responsibilities.

> This court reviews de novo the sufficiency of the evidence to sustain a conviction. *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010), citing *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). On review, evidence is viewed most favorably to the verdict, giving it the benefit of all reasonable inferences. *Id*. Reversal is appropriate only where no reasonable jury could find all the elements beyond a reasonable doubt. *Id*. This court does not weigh the credibility of the witnesses or the evidence. *Id*. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict. *Id*.

*United States v. Aldridge*, 664 F.3d 705, 715 (8th Cir. 2011). "[A]ll elements of an offense 'must be established by independent evidence or corroborated admissions.'" *United States v. Kirk,* 528 F.3d 1102, 1110 (8th Cir. 2008) (quoting *United States v. Eagle*, 515 F.3d 794, 807 (8th Cir. 2008).

This corroborating evidence need not be sufficient, on its own, to establish the body of the offense beyond a reasonable doubt, or even by a preponderance of the evidence. *Eagle*, 515 F.3d at 807; *Whiteside*[ *v. United States*], 346 F.2d [500,] 505[ (8th Cir. 1965)]. Rather, corroborative evidence is sufficient if it "merely fortifies the truth of the confession without independently establishing the crime charged." *Wong Sun*[ *v. United States*], 371 U.S. [471,] 489 (1963)].

*Id*. at 1111. An individual is in violation of 18 U.S.C. § 1163 if he

embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization.

The government's primary evidence consisted of Yankton's own statements to FBI Special Agents Kellerman and Cima wherein he admitted that he told Black to apply for LIHEAP benefits when he knew that if his income were included in the application, the household would be ineligible under the program. These statements showed that Yankton knowingly embezzled the LIHEAP funds from the Indian tribal organization. Contrary to Yankton's contention that the government failed to corroborate his admission of knowledge, the record contains substantial independent evidence that fortifies the truth of Yankton's statements to the FBI. This evidence includes that (1) Yankton's residential status for the relevant time period was corroborated by Russell Wallace, the propane deliveryman, and by LaVonne Alberts of the LIHEAP office; (2) Yankton served the Council as the Secretary/Treasurer when the LIHEAP benefits program grant application was discussed; (3) The propane company records showed that LIHEAP paid the cost of the propane that Black's residence received; and (4) W-2 forms for Black and Yankton showed that their combined income made them ineligible for LIHEAP benefits.

Viewing the evidence in a light most favorable to the jury verdict and not weighing the credibility of the witnesses, *see Aldridge*, 664 F.3d at 715, we conclude that sufficient evidence supported Yankton's conviction.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____